IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATELYN NICHOLS,                            3:19-cv-01047-BR

              Plaintiff,                    OPINION AND ORDER

v.

PRINCIPAL LIFE INSURANCE
COMPANY,

              Defendant.


CHRIS ROY
R. DARRIN CLASS
JESSE COWELL
Roy Law Group
1000 S.W. Broadway Ave., Ste. 900
Portland, OR  97205
(503) 206-4313

        Attorneys for Plaintiff

ROBERT ENGEL
MICHAEL BRISBIN
LISA PASSALACQUA
Wilson, Else, Moskowitz, Edelman & Dicker LLP
525 Market St., 17th Floor
San Francisco, CA  94105
(415) 433-0990

        Attorneys for Defendant


1 – OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff Katelyn Nichols's Motion (#30) for Partial Summary Judgment. Notwithstanding Plaintiff's requests for oral argument both in her Motion and by email on June 8, 2020, the Court notes Plaintiff does not assert any basis to suggest the record is not sufficiently developed to resolve this Motion on the pleadings. In any event, the Court is satisfied oral argument would not be helpful to resolve this Motion.

For the reasons that follow the Court concludes there is a genuine dispute of material fact, and, therefore, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## BACKGROUND

The following facts are taken from the Joint Statement of Agreed Facts (#29) and the filings of the parties regarding Plaintiff's Motion for Partial Summary Judgment. The facts are undisputed unless otherwise noted.

Plaintiff attended dental school at Oregon Health and Sciences University (OHSU) and graduated in 2015. During dental school Plaintiff met Clay Cooper, an insurance broker who marketed disability and life insurance to dental graduates.

2 – OPINION AND ORDER

Cooper was the local agent/producer for Defendant.  Amy Thornton
worked for Pacific Advisors in Seattle, Washington, and was the
field office contact who acted as the "go-between" for Defendant
and Cooper.  Plaintiff did not have contact with Thornton at any
time during the application process.

On June 11, 2015, Plaintiff went to Cooper's office to
begin the application process for disability insurance coverage
with Defendant Principal Life Insurance Company and for life
insurance coverage with Northwestern Mutual Insurance Company.
The Application for disability insurance with Defendant is a
four-part form:  Part A consists of general information
regarding the applicant such as name, address, income, and type
of coverage requested; Part B is the applicant's detailed
medical history; Part C is the Agreement/Authorization to Obtain
and Disclose Information; and Part D is the Agreement/
Acknowledgement of Delivery, which is to be executed at the time
the policy is delivered to the applicant.  Plaintiff completed
the following during her meeting with Cooper:  Part A and Part C
of the Application; an authorization to allow Defendant to
obtain her medical information from health-care providers; a
consent to take and to test her blood; and an authorization for
electronic fund transfers for payment of Plaintiff's initial

premium.

On July 21, 2015, Plaintiff again went to Cooper's office to complete Part B of the Application (the "TeleApp" process), which was a telephone interview with Defendant regarding Plaintiff's current and past health history.

On July 23, 2015, Defendant approved Plaintiff's Application for disability coverage.  Later the same day Thornton emailed Cooper and advised him that Defendant had approved coverage for Plaintiff, that Thornton would mail the policy to Cooper "right away," and that it should arrive "early next week."

On July 29, 2015, Defendant issued a "Contract Form List" and policy-issuing instructions for Plaintiff's Policy.  The Contract Form List identified the documents that constituted the Policy and included the four-part Application, a "backdating" form, contract pages with standard terms and provisions, various riders, and an endorsement.  The documents on the Contract Form List were assembled by Defendant and bound together.

On July 30, 2015, Defendant sent the final bound Policy to Pacific Advisors, who received it on July 31, 2015, and then forwarded it to Cooper.

On August 20, 2015, Cooper contacted Plaintiff to obtain

her new address in Salem, Oregon, and "made a plan" for Plaintiff to come to his office to finalize the application process in person.

On August 20, 2015, Plaintiff sent a text message to Cooper with her new address in Salem and asked whether Cooper could send her the forms to sign.  Cooper responded he could set up a telephone call with Plaintiff and that his assistant would email her the signature pages to sign.  Allyson Torres, Cooper's assistant, states after she obtained Plaintiff's new address, she placed the Policy and all documents accompanying it in a large envelope addressed to Plaintiff at her Salem address.

On August 21, 2015, Cooper and Plaintiff participated in a telephone call.  After the call Torres emailed documents to Plaintiff to sign and stated in the email:

> Just wanted to follow up on the conversation you and
> [Cooper] had, and send over the policy agreement forms
> that he had mentioned. . . .  If you could please
> sign/date the policy agreement pages and send them
> back to me that would be great!

On August 24, 2015, Plaintiff signed Part D of the Application that Torres emailed to her.  Part D of the Application is the "Agreement/Acknowledgment of Delivery" and states in part:

> I have read all the questions and answers obtained
> during the telephone application interview.  This

includes part B on the proposed insured.  I represent
that all statements are true and correct and were
correctly recorded before I signed my name below.
I have also signed a copy of this agreement/
acknowledgment of delivery included with my policy.
I understand and agree that the statements in the
application, including all of its parts, and
statements by the proposed insured in any medical
questionnaire(s) that becomes a part of this
application, will be the basis for and form a part of
the policy.

On August 27, 2015, Plaintiff sent a text message to Cooper
in which she stated the documents were "very confusing," that
she did not understand the wording, and that she was confused
about where she was supposed to sign.  On that same day Torres
requested Plaintiff to email the signed documents back to her,
which Plaintiff did.

In April 2017 Plaintiff applied for benefit update coverage
with Defendant.

On April 28, 2017, Plaintiff was injured in a rock-climbing
accident.

On June 28, 2017, Plaintiff tendered a Disability Claim
Notice to Defendant and claimed she had become disabled on
June 9, 2017.

On April 13, 2018, Defendant notified Plaintiff that
Defendant had rescinded her Policy based on misrepresentations
in her medical history and misinformation on her Application for

disability coverage.

On July 2, 2019, Plaintiff filed a Complaint against Defendant for breach of contract.

On March 23, 2020, Plaintiff filed a Motion for Partial Summary Judgment challenging the validity of Defendant's rescission of the disability Policy.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*.  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."  *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller*

*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

I.  **There is a genuine dispute of material fact as to whether Plaintiff received a copy of the Policy with the Application attached.**

Plaintiff contends she is entitled to judgment as a matter of law on the ground that Defendant's rescission of the Policy was invalid because it did not comply with Oregon Revised Statutes § 742.013(1), which requires a copy of the Application to be attached to the Policy when the Policy is issued. Plaintiff contends she never received a copy of the Policy with the Application attached.  Plaintiff also contends Defendant made other errors during the application process; that the Policy should have been back-dated; and that the Policy should have been issued with an effective date of July 10, 2015.

Plaintiff relies on Oregon Revised Statutes § 742.013, which provides:

> (1)  All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts and incorrect statement shall

> not prevent a recovery under the policy
> unless the misrepresentations, omissions,
>     concealments of fact and incorrect
>     statements:
> (a)  Are contained in a written application
>      for the insurance policy, and a copy of
>      the application is indorsed upon or
>      attached to the policy when issued;
> (b)  Are shown by the insurer to be
>      material, and the insurer also shows
>      reliance thereon;
>      and
> (c)  Are either:
>      (A)  Fraudulent; or
>      (B)  Material either to the acceptance
>           of the risk or to the hazard
>           assumed by the insurer.

Plaintiff "hotly" disputes she made any misrepresentations in the Application, but, in any event, she asserts she never received a copy of the Policy with the Application attached. Plaintiff contends Part D of the Application was emailed to her; that she signed it on August 24, 2015; and that she returned it to Cooper by email. Plaintiff argues Defendant's statements that it complied with its "usual and customary business practices" is insufficient to establish by "substantial evidence" that Plaintiff received the Policy with the Application attached "concurrent/simultaneous" with Plaintiff signing Part D on August 24, 2015.

In response Defendant contends the Application was attached to the Policy when Defendant issued the Policy; that Plaintiff

acknowledged she received the Policy by signing Part D of the Application; and, therefore, that there is a genuine dispute of material fact that precludes the Court from granting Plaintiff's Motion.[1]  Defendant also contends Plaintiff's assertions as to the issue date of the Policy and other alleged errors in the application process are not relevant to the issue of Plaintiff's simultaneous receipt of the Policy and Application.

Defendant submitted the following evidence to support its position:  Penny Van Der Kamp, Assistant Manager in Defendant's "Print to Mail" Department, stated on July 29, 2015, that the Policy was assembled to be sent to the producer/agent.  The Print to Mail Department ensures all documents listed in the Contract Form List are attached before mailing the Policy and that the documents are bound together, including the Application form. The Print to Mail Department accesses Defendant's "U-drive,"

---

[1]  Defendant also requests the Court to dismiss Plaintiff's Motion on the ground that Plaintiff's attorney did not comply with Local Rule 7-1 when he failed to provide a draft of the Motion for Partial Summary Judgment to defense counsel before filing it.  Although Plaintiff's counsel apparently agreed to do so, Local Rule 7-1 does not require a movant to provide a draft of an intended motion, but only requires a "good faith effort [between the parties] . . . to resolve the dispute" before filing a motion.  The Court, accordingly, denies Defendant's request and notes Defendant's argument is yet another example of the parties' historical pattern of failing to pursue "good faith" efforts to resolve or at least to narrow their disputes before engaging with the Court.

which is an internal storage folder, to obtain an insured's
disability-income application to attach to the Policy document.
If the U-drive does not contain the application, the Print to
Mail Department contacts the New Business Case Coordinator to
place an insured's application, including all parts, in the U-
drive so it can be attached to the policy.  Van Der Kamp stated:
"I am not aware of a single instance in which a Policy contract
was mailed out without the application attached."

On July 30, 2015, Defendant's Transaction Information log
for Plaintiff's file confirms Plaintiff's Policy was mailed to
Pacific Advisors.

Thornton stated Pacific Advisors received the bound Policy
from Defendant on July 31, 2015, and on the same day Pacific
Advisors sent the Policy and all documents accompanying it to
Cooper in Portland, Oregon.

Cooper stated when he received the Policy from Pacific
Advisors, the bound Policy was placed in an envelope and mailed
to Plaintiff on August 21, 2015, pursuant to his office's usual
and customary business practice.  Torres also stated Plaintiff
sent her an email on August 27, 2015, and stated:  "Hi Allyson,
thanks for the mail and email.  Here you go."  Defendant
contends this evidence shows Plaintiff received the Policy that

Torres mailed to her.

Plaintiff, however, asserts Defendant has failed to provide "substantial evidence" to show that its usual and customary business practices were actually followed in this case.  Thus, Plaintiff contends Defendant has not established a genuine dispute of material fact exists.  To support her position Plaintiff relies on *Burgess v. Quest Corp.*, 546 F. Supp. 2d 1117 (D. Or. 2008), and *Campos v. Bluestem Brands*, Case. No. 3:15-cv-00629-SI, 2016 WL 297429 (D. Or. Jan. 22, 2016).

In *Burgess* the court addressed whether the plaintiff was bound by the terms of an arbitration provision in the internet- and wireless-service agreements with the defendant. The defendant argued it was their standard business practice to inform the customer of the terms of its service agreements at the time the customer subscribed for services.  The court concluded the defendant failed to establish by a preponderance of the evidence that the plaintiff agreed to the terms because the defendant did not provide any "evidence specific to the call between plaintiff and defendant or the materials actually provided to plaintiff so as to establish a 'meeting of the minds' between the parties."  546 F. Supp. 2d at 1122.  In *Campos* the court also addressed whether the plaintiff was bound

by the terms of an arbitration provision in the credit-card
agreement with the defendant.  The defendant also relied on its
standard business practices to send a "welcome packet" of
materials that contained an arbitration provision to all new
credit-card applicants.  The plaintiff contended she never
received such materials.  The court concluded the defendant
presented substantial evidence that their "standard business
practices were followed," and, therefore, the defendant "proved
by a preponderance of the evidence that [the plaintiff's]
welcome packet was properly printed, assembled, and mailed, and,
thus, that it contained the standard terms and conditions
statement."  2016 WL 297429, at *8.  The court also noted the
"long-standing common law principle" recognized by Oregon courts
that "a letter properly addressed and mailed is presumed to have
been received."  *Id.* (citing *Start v. Shell Oil Co.*, 202 Or. 99,
123 (1954)).

        On the current record the Court concludes Defendant
has presented "substantial evidence" that its standard business
practices were followed in its processing of Plaintiff's
disability Policy (including the mailing of the Policy with the
Application to Plaintiff), and, therefore, Defendant has
established a genuine dispute of material fact exists that must

be resolved by the trier-of-fact.  Accordingly, the Court

concludes Plaintiff is not entitled to judgment as a matter of

law on the issue of the validity of Defendant's rescission of

the Policy.

## II.  Other issues raised by Plaintiff are not relevant to the issue of Defendant's rescission of the Policy.

Plaintiff raises other issues regarding alleged errors by

Defendant in processing her application.  For example, Plaintiff

contends Defendant failed to follow its own guidelines and

procedures during the TeleApp process, failed to back-date the

effective date of the Policy, and failed to collect her premium

until September.  In response Defendant contends these issues

are not related to whether there is a genuine dispute of

material fact regarding its rescission of the policy, and,

therefore, the Court should disregard Plaintiff's additional

arguments at this stage of the proceedings.

As discussed above, Plaintiff contends she never received

the Policy with the Application attached as required by Oregon

law, and, therefore, Defendant improperly rescinded her Policy

when it relied on alleged misrepresentations in the Application.

Inasmuch as the Court has concluded there is a genuine dispute

of material fact as to whether Plaintiff received the Policy

with the Application attached, the other issues asserted by

Plaintiff are not relevant at this stage of the proceedings. The Court, therefore, does not need to address those issues to resolve Plaintiff's Motion.

Defendant also raises evidentiary objections to the Declarations submitted by Plaintiff and her counsel in support of Plaintiff's Motion.  Inasmuch as the Court has concluded there is a genuine dispute of material fact that must be resolved by a jury, the Court also concludes Defendant's evidentiary objections are moot for purposes of resolving this Motion.

## CONCLUSION

For these reasons the Court **DENIES** Plaintiff's Motion (#30) for Partial Summary Judgment.

Based on the Court's denial of Plaintiff's Motion and pursuant to the Court's prior Order (#44) issued June 3, 2020, regarding discovery disputes between the parties, the Court now **DIRECTS** the parties (1) to confer meaningfully about a new schedule for depositions of medical witnesses consistent with the requirement of Federal Rule of Civil Procedure 1 to manage litigation for its just, speedy, and inexpensive resolution and (2) to file **no later than**

16 – OPINION AND ORDER

**June 29, 2020,** a Joint Status Report regarding those depositions setting forth a proposed schedule for such discovery and concisely explaining the bases of any still-unresolved disputes about such depositions, including Defendant's requested continuation of Plaintiff's deposition. The Joint Status Report must also include a proposed new schedule for expert witness discovery, including initial and responsive expert disclosures and proposed expert depositions.

IT IS SO ORDERED.

DATED this 18th day of June, 2020.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge